978 F.2d 1267
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Melvin BOWMAN, Plaintiff-Appellant,
v.
Nora KURTZ, Sgt.; Deloris Martinez; Timothy Ritter; Don
Larson; Ed Holden; William Price, Warden; and
Gloria Masterson, Defendants-Appellees.
 No. 92-1167.
 United States Court of Appeals, Tenth Circuit.
 Oct. 20, 1992.
 
 Before SEYMOUR, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Melvin Bowman appeals the district court's dismissal of his 42 U.S.C. § 1983 suit against various corrections personnel employed by the Colorado Department of Corrections at the Arkansas Valley Correctional Facility. Bowman's complaint revolves primarily around an allegation that the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, with respect to their treatment of a recurring nose bleed over several days time. According to Bowman's complaint, he had a nose bleed of unstated duration on the evening of February 23, 1992. He was escorted to the prison medical facility and had his blood pressure checked. It was not high. He put in a sick call slip and was seen by a physician's assistant at the prison medical facility the next morning. The next afternoon, February 24, 1992, Bowman had another nose bleed which he stopped by using ice. The next morning, he states that his nose "began again to bleed slightly." He went to the medical facility without first obtaining a pass, as required, and was sent back to his cell house where he obtained one. He then returned to the medical facility and was informed by one of the defendants that he could not see the physician's assistant at that time because there were thirty-nine inmates properly present for sick call that day, and he had not put in a sick call slip. He was invited to put in a sick call slip for the next sick call. Apparently, Bowman's nose was not bleeding during this time, and there was nothing discernible about his condition which would suggest to the people he spoke to that any unusual condition existed. Because of Bowman's conduct at that time he was given a disciplinary write-up for disobeying a lawful order to leave the medical area. Apparently the disciplinary write-up proceeded through the normal disciplinary hearing process thereafter, and a punishment was imposed.
 
 
 3
 About an hour after Bowman had been refused admittance to see the physician's assistant, and was escorted from the medical area, his nose commenced to bleed again, at which point he was given a pass to return to the medical department. At that time he was attended to by the physician's assistant and a registered nurse on duty. Following treatment, the physician's assistant determined to have Bowman transported to the state hospital to have a blood vessel in his nose cauterized. On February 26, 1992, Bowman was taken to the state hospital and the cauterization was performed without incident. Bowman's complaint does not allege that he suffered any ill effects either from the procedure or the nose bleeds which preceded it.
 
 
 4
 In addition to alleging indifference to his medical needs, Bowman makes generalized allegations that his inability to see the physician's assistant on the morning when thirty-nine other inmates were waiting with proper sick call slips, and the disciplinary write-up against him for failing to leave the medical area when ordered, were due to his race, in violation of Colorado statutes, and a denial of equal protection.
 
 
 5
 As we recently stated in Miller v. Glanz, 948 F.2d 1562 (10th Cir.1991):
 
 
 6
 The Eighth Amendment, applied to the states through the Due Process Clause of the Fourteenth Amendment, prohibits infliction of cruel and unusual punishments on those convicted of crimes. In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court recognized that this prohibition applies to the inadequate provision of medical care to prison inmates. However, the Court held that because only the " 'unnecessary and wanton infliction of pain' " implicates the Eighth Amendment, a prisoner advancing such a claim must allege "deliberate indifference" to "serious" medical needs. Id. at 104, 106 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).
 
 
 7
 In Wilson v. Seiter, 111 S.Ct. 2321 (1991), the Court clarified that the Eighth Amendment's deliberate indifference standard under Estelle has two components: an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. Id. at 2324. With regard to the subjective component, "allegations of 'inadvertent failure to provide adequate medical care' or of a 'negligent ... diagnos[is]' simply fail to establish the requisite culpable state of mind." Id. at 2323; see also El'Amin v. Pearce, 750 F.2d 829, 832-33 (10th Cir.1984).
 
 
 8
 Id. at 1569. Applying these standards, we conclude that Bowman's complaint, on its face, states no arguable basis in law or fact for an Eighth Amendment claim against the defendants for deliberate indifference to a serious medical need. At most, Bowman describes a mere difference of opinion between him and prison staff with respect to the diagnosis or treatment of his condition during a brief span of time. Such a difference does not support a claim of cruel and unusual punishment. See Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir.1980), cert. denied, 450 U.S. 1041 (1981).
 
 
 9
 With respect to the foregoing conclusion, and the analysis and disposition of Bowman's other claims, we are substantially in accord with the report and recommendation of the magistrate judge, and the order of the district court in this case. Bowman's bare conclusion that any action directed at him was racially motivated is not only wholly unsupported, see Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991), it is affirmatively contradicted by the facts. The reason given for not allowing Bowman to see the physician's assistant was that he did not have a pass, then did not have a sick slip, and there were thirty-nine other inmates at the medical facility, with proper sick slips, waiting for attention. Bowman does not allege, for instance, that all of those thirty-nine inmates were white, and that all other inmates of a different race or color were turned away, or that any such practice could be identified. To the contrary, Bowman's own complaint indicates that he was seen at the medical facility promptly on the evening of February 23, 1992, and again the next morning; and that upon the severe recurrence of his nose bleed the following day, he was promptly admitted for medical attention. Such facts hardly support a claim of denial of equal protection. And, with respect to Bowman's due process complaints, no facts are alleged showing that he was not provided a constitutionally adequate disciplinary hearing.
 
 
 10
 Finally, we note that Bowman asserts impropriety in the manner by which the district court dismissed his complaint. It is unclear whether the district court dismissed Bowman's complaint pursuant to 28 U.S.C. § 1915(d) or pursuant to Fed.R.Civ.P. 12(b)(6). From the cases cited in support of its dismissal, it appears the court relied on 12(b)(6). Bowman argues that the court erred in not issuing a summons and dismissing pursuant to a motion by the defendants.
 
 
 11
 Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."
 
 
 12
 Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir.1991) (quoting McKinney v. Oklahoma, 925 F.2d 363, 365 (10th Cir.1991)). As our discussion above indicates, such was clearly the case here.
 
 
 13
 Bowman also argues the district court erred when it observed, in dismissing Bowman's complaint, that he had failed to file an objection to the magistrate judge's report and recommendation when in fact Bowman had filed a motion for an extension of time in which to file objections the day before the court dismissed his complaint. This argument fails for three reasons. First, his motion for an extension of time was clearly untimely. Second, the district court did not refuse to consider any argument because Bowman had failed to file an objection, but rather evaluated his arguments fully. Finally, Bowman was able to raise on appeal any objections he may have had to the magistrate judge's report, and we have fully considered his case.
 
 
 14
 For the reasons stated, the order of the district court dismissing Bowman's complaint is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3